If I could reserve a couple of minutes for rebuttal, I'd appreciate it. My name is Gary Silviger, representing Mr. Azer. Thank you so much. There's good reason why asylum cases or asylum law and cases are very favorable to individuals because the consequences can be extremely severe. We know that not only through the cases but through everyday knowledge, just by reading the papers and looking at the media. In this case, Mr. Azer, we're not starting on a clean slate at all. In fact, we have a case right from this circuit, Malti v. Ashcroft, which is a twin of Mr. Azer's case. Both Mr. Malti and my client, Mr. Azer, are Christians from Egypt. They both applied for asylum in 1997. They were both denied asylum. Judges said they did not have sufficient proof. They both appealed to the Board of Immigration Appeals, lost at the Board of Immigration Appeals. They both filed motions to reopen but for different reasons. In the published case, Mr. Malti filed for suspension of deportation. And here, Mr. Azer had an attorney, a former attorney, who thought that Mr. Azer had not filed a brief when, in fact, it was the government who had not filed a brief. So, of course, that motion to reopen was denied. Then Malti waited about 16 months to file the motion to reopen, which he won on, which was the new asylum evidence. Mr. Azer, the petitioner, waited 22 months, similar amount of time, to file his motion to reopen with the new evidence showing the changed country conditions. Again, both were denied the motion to reopen by the Board. Mr. Malti, of course, prevailed when it came to this court. And in the Malti case, this court said that the critical question is whether circumstances have changed sufficiently that a petitioner now has a well-founded fear of persecution. Unfortunately, the Board did not say that in this case. And secondly, in the Malti case, this court said that the relevant question is not whether Malti's new information predates his first motion, which was suspension of deportation that had nothing to do with changed circumstances for asylum, but rather whether the new information was unavailable or undiscoverable at the previous hearing. Well, let's look at the four errors of the Board of Immigration Appeals in this case. First, the Board said that Mr. Azer should have raised the asylum information at his first motion to reopen. But I just read the statement from Malti saying that that's not necessary. If you file a motion to reopen for another purpose other than asylum, you do not have to raise the asylum information at that time. Why? Because asylum is so important. There's so much at stake. And the statute says you can file the motion to reopen for asylum at any time. There are no time periods on it, unlike many other statutes and regulations. The second mistake that the Board made was they said that he filed a motion to reopen for asylum because he was in custody. They speculated about that. It was simply not true. Because he said he was in custody and apparently the court thought that he was trying anything to win his case, they didn't look at the facts of the law. When we did our motion to reconsider, I explained that Mr. Azer had retained me about a month and a half before he had been arrested by Immigration. And we were in the process of preparing that motion to reopen for asylum. Counsel, can I ask you a quick question? In looking at this, the underlying facts here, it looked to me like he was, according to him at least, being persecuted from day one. I mean, he's being chased around. People are after him. The police are mistreating him. His wife had to flee. All of this stuff is going on. I'm wondering what the change condition was. It sounded pretty terrible from day one. What's the change condition? The change condition, as the statute says, the change has to occur since the hearing. And his hearing was in 1997. And so any evidence and all evidence that took place since 1997 is relevant for the change circumstances. I mean, I don't think it doesn't occur. What are the change circumstances? That's what he's asking. Yeah. I mean, I had a law clerk many years ago whose husband was a Coptic Christian, had to flee many, many, many years ago. Now, that's not in this record, but I mean, even from your client's own assertions, he was being chased around. He was being discriminated against. His life was threatened. Officials were not, the police were not helping him. In fact, there were police that were apparently in cahoots with the radical group. All of this happened from day one. So what is the change condition? That's what I'm asking. Well, the Board of Immigration Appeals and the immigration judge, as the court knows, denied asylum. And that was the end of that part of his case. Then he became very active in the United States. He became very public. He was on television, public television, explaining how bad the Egyptian government is. He had debates. He started his own chat room around the problems in Egypt. He was at leading demonstrations when Christians in Egypt were being massacred there. He had a very public picture of himself, and that was one big change. Well, so you're saying he created his own change condition by making himself a rather vocal opponent. But the problem is that they were after him before anyway. I mean, it's not like he was an accepted member of society. He came to the United States, exercised what we would consider our First Amendment rights. He was very vocal, criticizing. Then all of a sudden the death threats started. That would be a clear change of conditions, but they were chasing him around before. They were, but not anywhere near the extent that would have won the case. It's not pretty bad to me. Well, he had problems. He had problems there, but it wasn't anywhere near the extent that it is today. Remember, his wife was also raped after his hearing. His wife was raped in Egypt. Well, was that terrible? It became more serious in time, and that happened after his 1997 immigration judge decision. So these are all the new facts that by the statute and by the multi-case are permissible. So what was not a good situation, but not persecution, became initially became one of a much stronger case where now he could prove that well-founded fear. In fact, I think much more than well-founded fear. He will be persecuted. He will be harmed. Tell me, when did they start at prayers in the mosque calling for his death? I don't know the exact date. I also notice there's no – it happened, I think, around 2000 or so. This was post his hearing? Yes. Yes. So there's – because of his activity here, and his activity came from the heart. Nobody would have – do that to themselves. Nobody would take that time and energy and commitment to show the world what was going on in their country if they really didn't feel strongly about it, and he has suffered the consequences of this. What is the result? Will he be deported to Egypt and suffer the consequences that we know he will suffer? Is that the alternative? Mr. Silver, what are you asking us to do? What is the relief that you want? We would like it to at least be remanded to the board so that they could, for the first time, decide whether there's changed circumstances. They never dealt with that question. They used all sorts of reasons that had nothing to do with the law. They said it wasn't due diligence. Why didn't you file it earlier when there's no requirement to do that? Why didn't you file it with the motion to reopen? The question was what do you want us to do? Do you want us to direct the VIA to reopen? Yes. Yes, to reopen based on the changed circumstances, or at least to deal with the changed circumstances, which they never did. They said there could be a prima facie case of asylum, and we still don't have to reopen it. So they haven't given him an opportunity to really present his case. Have you filed for cat relief? For cat relief? No, we did not in this. Can you still? Yes, we can. If it's reopened, right? If it's reopened, you could ask them to remand so you could file for cat relief. Yes, we could do that, yes. So we do ask that you... Did you want to save a few minutes or so for rebuttal, Mr. Silver? Thank you very much. We'll hear from the government. Good morning, Your Honor. My name is Nell Kamani, and I represent the government in this case. I'm sorry, I didn't get your last name. Kamani. Okay, thank you. Can you hear me? It's nice to speak a little louder. I'll speak a little bit louder. Is that better? That's better. Petitioner's case has been reviewed by the Board of Immigration Appeals four times now. Neither in his motion to reopen, motion to reconsider, or in his briefs before this Court does he justify the delay of three years between the time of the events that he alleges support his of the application for asylum based on changed country conditions and the filing of his motion to reopen. Now, when the grounds for reopening are changed conditions, there's no time limit. Is that not correct? So it might be a prudential concern, but there's nothing in the statute that prescribes a certain time. Is that correct? Neither the statute nor the regulations have an explicit time limitation. However, the Supreme Court as well as the courts of appeals have read into the statute and regulations that there is a need for promptness. There is a need to prevent endless delay of removal proceedings. And so the burden is on the alien to act diligently, to act promptly. Otherwise, as the Supreme Court has noted, there will be an endless delay of deportation proceedings. And here, as I stated, he does not present any justification for his delay. Rather, he continually states that he may not justify the delay because the statute and regulations do not have an explicit time limitation. But as I said, it has been interpreted that an alien must act with diligence. Rather, as the board noted, he only presented his motion to reopen when he was placed into custody. And this sort of piecemeal litigation is not something that the agency wants to promote. The Petitioner states that the Malti case and his own case are very, very similar. However, when we look at the Malti case, there's actually quite a few distinguishing facts between the two cases. There was no delay in Malti. In Malti, his evidence of changed country conditions took place between December 1998 and May 2001. Six months after that last event, when his father was attacked in Egypt in May 2001, Malti brought his second motion to reopen. So six months after that last event, he brought his motion to reopen to the attention of the Board of Immigration Appeals. In this case, Petitioner waited three years. The majority of his events took place between 1999 and 2001. His wife came to the United States, I believe, in July 2001. He waited after that three more years after he was placed into custody to bring those events to the attention of the Board of Immigration Appeals. Maybe you have a better handle than Petitioner's counsel. When did this kind of a fatwa come down from the mosques calling for his death? In the record, the article that he submitted about that, there's no date on that. In his motion to reopen, there's no date on that specific event. As Petitioner's counsel just stated right now, he believes it happened sometime in 2000. But neither in his brief before this Court, in his motion to reconsider, motion to reopen, or that actual article that talks about this fatwa, there's no date on any of those documents. That seems like a pretty significant event to me. I mean, it's one thing for – I mean, it's awful. But it's one thing for small groups to be kind of upset and chasing him around. It's another thing for the Mullahs to be calling for him to be executed. That, you know – it's like Salman Rushdie, you know, is running around. It's not a good thing. But if it indeed, in fact, took place sometime in 2000 as Petitioner's counsel states here, then, as I said, the majority of his events took place between 1999 and 2001. This is what the Board of Immigration found. And if that is true, then he waited three years to present those facts to the agency. And there was no – no diligence in that. And the Board, therefore, properly denied his motion to reopen. So the government is suggesting that lack of diligence would allow a person to be persecuted and killed. That's the consequence. The burden of bringing a motion to reopen is on the alien. If he fears for his life that – My question takes a yes or no answer. I would say no. The government does not want Mr. Azar to be persecuted in no way. But the burden was on him if he is so fearful of his life to go back to Egypt. And all of these things are happening between 1999 and 2001. And there's this fatwa on him in 2000. Then why? Why is he waiting to bring his evidence of changed country conditions to the attention of the Board of Immigration Appeals? As Petitioner's counsel stated, he felt that his initial case could not win. And so once all these events occurred, he felt that he had a stronger case. Then why didn't he bring it forth? Well, it's not a – I could see, counsel, where it might be a matter of credibility. You know, if somebody's waiting around and waiting around and not doing anything, all of a sudden they say, oh, the Mullahs are chasing after me and all of this. The man produced a newspaper article. So I don't think there's a huge issue about whether this happens. It doesn't seem like a credibility issue. I do not – I'm not arguing for credibility. I'm saying why didn't he bring this forth earlier? I can see a lot of reasons. Poor lawyering. He's been badly treated by the agency already. He feels futile, depressed. As for the bad lawyering, other than that first ineffective assistance of counsel claim, which was not based on any merit, he did not present any other ineffective assistance of counsel claims. But you were asking for reasons why he might wait. Yes. And I can think of a lot, and you can too. So as I stated, there are differences between this case and the multi-case case, the major one being that there was no delay in the multi-case. As I stated, Malsi brought forth his motion to reopen based on changed country conditions within six months of the last event, the attack on his father in Egypt. Whereas here, Mr. Azar did not bring forth his motion to reopen until three years later, until afterwards he was sent to custody. The purpose of a motion to reopen is for the lawful and fair disposition of an alien's case. But an alien at the same time should not be permitted to abuse that privilege by bringing forth a motion any time he deems fit. They must act promptly and diligently, and that is why the Board of Immigration Appeals acted within a broad discretion. If we were to deny the petition and he were placed in a position of having to be returned to Egypt, is there any possible relief for him at that point? As he stated in his motion to reopen, his wife came to the country in July 2001. I have no idea whether or not she has applied for asylum or not. Mr. Azar, in his motion to reopen, did not submit a second application for asylum, which he is required to do with a motion to reopen. You are supposed to provide the agency with the application of relief that you are seeking. In that application, if he had submitted that application, we possibly would have known his wife's agency number, whether she is applying for asylum, whether she was going to be a derivative on his asylum application. So if his wife is in proceedings, there is a possibility that he could get derivative. Is there any possibility, as Judge Fletcher asked, is there any possibility for cat relief at this time? That would have to be done through a motion to reopen. To reopen, to apply for cat relief. Yes. I see. That would take a separate motion from the current motion that we're dealing with? A different reason for reopening? Yes. But then the government would argue diligence. Well, it depends on what the board, how the board would decide the case. You'd just say, well, he could have raised that request at the earlier, one of these earlier motions, and therefore he didn't act diligently. I believe in his motion to reopen, he did argue cat protection. Now, as I said, he did not file an application with his motion to reopen. Generally on the application, there is a box to check if they're applying for cat relief. But in his motion to reopen, I believe he does state cat protection. Okay. In conclusion, the Board of Immigration Appeals did not abuse its broad discretion in denying Mr. Azar's motion to reopen where he did not act with diligence in waiting three years to file it. Okay. Thank you for your time. Thank you. Mr. Silver, you've got a minute. Thank you. It sounds like the government wants to deport people, possibly to their death, because they may have waited a few months longer than the government thinks is appropriate. No, he waited several years longer than the government thinks is appropriate. Several years? Okay, several years. Well, don't you think there's a difference between a few months and several years? Well, when the statute says there's no time limit on it. I understand. How can the board add a requirement to that? And he did do it. What were the reasons? Did you give any reasons as to why? I mean, Judge Fletcher gave some wonderful hypothetical reasons. Did you ever argue any reasons why he waited? There were events that happened to him all the way until the end when he filed the motion. This was an ongoing case. He didn't stop his activity, nor were there telephone calls still being made to his family in Egypt asking for his whereabouts, and they were going to harm him. There were death threats against him in Egypt that were continuing. So a lot of this was a continuing motion. That would be more reason for him to try to stay here, not to ignore it. Well, we didn't file any reasons because the law and the cases were clear that no reasons were required. No, we had the Malti case. The Malti case is right on point. It says specifically that there are no time periods to file the motion. Malti did wait 16 months from the time of his decision from the Board of Immigration Appeals until he filed the motion. He had ongoing issues, and we had something we also have some reports from Amnesty International from 2003, shortly before we filed the motion, 2003-2004, that talked about persecution. It's in the record about persecution of Christians increasing in Egypt. So we did have some very updated information. You're over your time by a minute, so. Okay. Just one other thing, if I could do it quickly, about the first case, because the first case I was denied, there was no evidence that he was being harmed because of his Christian religion. It looked like more of an extortion. It looked like he had complained. So he didn't have a very strong case at that first point. Thank you. Thank you. Azar versus Holder submitted. Thank you, counsel, for your arguments. Oh, that's right. I'm sorry. I forgot. I forgot all about your. I thought you were just giving him moral support over there. Yes. I apologize. No problem, Your Honor. Good morning, Your Honors, and happy birthday, Judge Faez. Please. That's what I call researching your judges. May it please the Court. Thank you. I appreciate that. At our age, we don't normally like to get reminded of that. My name is Damon Thayer. I am here from Jenner and Block, and this Court appointed me as amicus curiae to Petitioner Azar. As amicus, I will be addressing a very narrow issue that I believe is dispositive to this case and requires a remand. Casting aside for the moment Azar's counsel's arguments regarding the BIA's errors, the BIA abused its discretion in this case in other ways because it failed to comply with Ninth Circuit precedent. The Ninth Circuit requires the BIA to consider and address all evidence, to state specifically what evidence it has considered, and to fully explain the reasons for any denial. In fact, Azar presented evidence of his changed circumstances in his second motion to reopen, which he filed in 2004 and which covered the time period 1999 through 2004. The narrow issue this argument focuses on assumes, for the sake of argument, that the government is correct regarding its interpretation of Malti, and therefore that the only possible evidence that might be relevant to the panel is the evidence from 2003 and 2004. Even under this gracious assumption, the BIA failed to consider, address, or even acknowledge this evidence. This evidence concerned Azar's protest during the month of Ramadan, the Islamic holy month, Azar's televised statement against the Egyptian government that many might interpret as anti-Muslim, and finally the 2004 Amnesty International report on country conditions in Egypt. The BIA's only reference to any of this evidence was, quote, Azar also made claims relating to his activities in the United States, end quote. In conclusory fashion, the BIA then stated that Azar failed to exercise due diligence concerning all evidence, even though this evidence was very recent. They basically said he was denied on timeliness issues. Exactly, even though some of this evidence was very recent, Your Honor. So by generically lumping together all of this evidence, there was no way to know whether the BIA properly considered any of it. Nobody, not the government, not Azar, and not even this court, has any idea whether the BIA properly undertook its function and reviewed all of this evidence. For all we know, the BIA overlooked all or some of the evidence. For all we know, the BIA would have been swayed had it actually reviewed this evidence, and it might have granted Azar asylum or other relief. And even if the BIA's generic reference to Azar's domestic activities would have been enough to constitute specifically addressing and considering all of the evidence, the BIA would still suffer from at least one fatal defect. At a minimum, the BIA did not acknowledge the 2004 Amnesty International report. This material evidence does not in any way relate to Azar's domestic activities, and thus there can be no argument that the BIA actually considered and addressed all evidence. Even the government's briefing does not argue that the BIA did this. Whether the court believes that the BIA's generic reference was sufficient for all of Azar's United States activities, or whether the court takes a more measured approach that the BIA did not fulfill its duty to review any of the evidence that is new, the BIA's defective denial order requires a remand. As is hopefully apparent, this is a simple issue, and it requires the court to break no new ground. To step back for a moment, it is helpful to compare this case with an even less egregious example that also requires a remand. The Ninth Circuit requires remands when the BIA merely repeats a petitioner's claim and summarily dismisses it without even purporting to engage in any substantive analysis or articulate any reasons for its decision. Now, in this case, the BIA did not mention or address Azar's new evidence, much less repeat Azar's claim and then issue a summary dismissal. So this case is clearly more egregious. Now, the court asked previously, what should it do in this case? What are its options? The court has a lot of options. However, I believe that the most just option is for the court to look and say, the BIA has already had one opportunity to fix its mistake. It has not done so. And also given the substantial merit behind Azar's asylum claim, this panel should reverse the BIA remand with instructions that the BIA must reopen this case and also instruct the BIA that unless it deems Azar not credible, it should grant asylum. The court has undertaken this approach before. Look at the multi-case. So this is proper. It does not go against that Supreme Court decision that came out in 2002, cautioning it against this approach. So unless the court has any other questions, thank you very much for your time. Yes, the government. Would the government like to respond to anything that the counsel just said, amicus counsel just said? Just a few points. There is a presumption that the BIA has reviewed the evidence included with the motion to reopen. Is there any, there's maybe a presumption, but it's a rebuttable presumption. Is that not true? That is true. But here the BIA must have reviewed the evidence because it noted that the majority of the events that Petitioner was using to support his allegations of changed country conditions all took place between 1999 and 2001. The board couldn't have stated that without having reviewed the information. Secondly, just because Petitioner attached a 2004 country report does not make his claim any more, the time between the events that occurred to him in particular and the time it took for him to file the motion to reopen. It doesn't negate that three years just because there's a 2004 country report. As Judge Ezra pointed out, the conditions in Egypt for Christians have been bad for years now. The 2004 report says nothing different on that matter than the reports now or earlier. And amicus pointed out the credibility issues and the summary affirmance of the initial immigration judge's decision. Those matters are not properly before the Ninth Circuit. There was never a petition for review files of that decision. Right. We just have the motion to reopen. And the motion. Motion to reconsider. Yes. Thank you, Your Honor. Thank you, Your Honor. We appreciate all the arguments. These are submitted. Our next case is the, I believe it's Shue.
judges: B. Fletcher, Paez, Ezra